FILED

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS, AUSTIN DIVISION**

2026 JUN 24  PM 2: 20

CLERK, US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

Case No. **1:26MC01700**ABD

|  |  |
|---|---|
| In Re *Ex Parte* Application of BigHit Music Co., Ltd., <br><br> *Applicant* | **UNOPPOSED *EX PARTE* APPLICATION FOR AN ORDER AUTHORIZING DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782 FILED BY BIGHIT MUSIC CO., LTD.; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Filed concurrently with: <br><br> (1) Declaration of Claire Shin; <br> (2) Subpoena; and <br> (3) [Proposed] Order |

**UNOPPOSED *EX PARTE* APPLICATION PURSUANT TO 28 U.S.C. § 1782**

BigHit Music Co., Ltd. ("BigHit" or "Applicant") respectfully petitions this Court for an order authorizing limited discovery for use in civil litigation in the Republic of Korea ("Korea")— or other jurisdictions as may be appropriate and necessary—pursuant to 28 U.S.C. § 1782 ("Application"). Applicant requests that the Court authorize the issuance of the proposed subpoena appended as Exhibit A ("Subpoena") to this Application. The Subpoena seeks limited discovery from X Corp. ("X") that is necessary to identify the owner(s)/user(s) of the X account, @jwngkcck, so that Applicant can name the identified individual(s) as the defendant(s) in a civil lawsuit in Korea. The requested discovery is necessary so that Applicant can identify the relevant defendant(s) to protect its interests in protected materials that the defendant(s) knowingly stole and leaked without authorization, to Applicant's substantial economic and reputational harm.

1

*Counsel for Applicant have conferred with counsel for X with regards to this Application, and counsel for X have confirmed that X does not oppose this Application and the relief requested herein, and that X consents to the appointment of a magistrate judge in this matter.* X reserves the right to raise any objections in response to a subpoena, once one is served on X.

**The Application meets the statutory requirements of § 1782:**

1) X is found within the Western District of Texas;

2) The requested information is for use in a civil proceeding in Korea, which will be filed as soon as the defendant(s)'s identity is identified through this Application; and

3) As a party to the Korean litigation, Applicant is an "interested person" under 28 U.S.C. § 1782.

**The Application satisfies the four discretionary factors:**

In *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004), the U.S. Supreme Court established four discretionary factors for courts to consider in Section 1782 petitions, and each weighs in favor of granting this Application:

1) X is not a Korean company, is not subject to Korean discovery, and will not be a party in the Korean litigation;

2) Korean courts are receptive to assistance from United States federal courts;

3) Seeking discovery through this Application is not an attempt to circumvent foreign proof-gathering restrictions or policies; and

4) The discovery requests are not unduly intrusive or burdensome.

Applicant files this Application *ex parte*, as "[i]t is routine and proper for applications under § 1782 to be filed *ex parte*." *In re Frederick*, No. 1-20-MC-965-RP-SH, 2020 WL 5742772, at *1 n.2 (W.D. Tex. Sept. 24, 2020), *report and recommendation adopted*, No. 1:20-MC-965-RP, 2020 WL 13190169 (W.D. Tex. Oct. 2, 2020) (quoting numerous cases for this proposition and acknowledging that "district courts routinely grant § 1782 applications *ex parte* because the respondent can challenge any discovery request by moving to quash the subpoena"). But even though Applicant could proceed *ex parte*, Applicant has provided a copy of this filing to X's counsel. ***X's counsel has reviewed this Application and does not oppose the relief requested herein.***

This Application is filed pursuant to 28 U.S.C. § 1782 and is based on this Application, the Memorandum of Points and Authorities in support thereto, the declaration of Claire Shin, the proposed order, any further oral and documentary evidence that may be introduced at or before the hearing of this Application, and all matters upon which judicial notice may be taken.

Applicant thus respectfully requests that this Court grant it permission to serve X with the subpoena attached hereto as Exhibit A.

Date: June 23, 2026

By: */s/ Brett Solberg*
Brett Solberg
brett.solberg@us.dlapiper.com
**DLA PIPER LLP (US)**
303 Colorado Street, Suite 3000
Austin, Texas 78701
Telephone: (512) 457-7000
Facsimile: (512) 457-7001

Harry P. Rudo
harry.rudo@us.dlapiper.com
DLA PIPER LLP US
650 S. Exeter Street, Suite 1100
Baltimore, MD 21202
Telephone: (410) 580-3000
Facsimile: (410) 580-3001

*Attorneys for Applicant BigHit Music Co., Ltd.*

## **TABLE OF CONTENTS**

I.    INTRODUCTION/ISSUES TO BE DECIDED ................................................................. 1

II.    BACKGROUND ......................................................................................................... 4

    A.    The Applicant................................................................................................. 4

    B.    The Subpoenaed Entity ................................................................................. 6

    C.    The Account User(s)' Misconduct ................................................................ 6

    D.    The Korean Lawsuit....................................................................................... 7

    E.    This Application and the Proposed Subpoena ............................................... 8

III.    LEGAL STANDARD ............................................................................................... 8

IV.    ARGUMENT ............................................................................................................ 10

    A.    All Three Statutory Requirements of Section 1782 Are Met........................ 10

    B.    All Four Discretionary Factors Support this Application. ............................11

V.    CONCLUSION............................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In Re Ex Parte Application of HYBE Co., Ltd. and Belift Lab Inc.,*
Case No. 5:25-mc-80246-PCP (N.D. Cal. Aug. 19, 2025), ECF No. 7, Order
Granting Ex Parte Application ...................................................................................................11

*In re Bleach, Inc.,*
No. 24-mc-80021-PCP, 2024 WL 1898450 (N.D. Cal. Apr. 30, 2024) ............................10, 14

*Bravo Express Corp. v. Total Petrochemicals & Refining U.S.,*
613 F. App'x. 319 (5th Cir. 2015) ...............................................................................................9

*Ecuadorian Plaintiffs v. Chevron Corp.,*
619 F.3d 373 (5th Cir. 2010) .................................................................................................9, 12

*In re Frederick,*
No. 1-20-MC-965-RP-SH, 2020 WL 5742772 (W.D. Tex. Sept. 24, 2020).........................3, 9

*In re Godfrey,*
Civil Action No. 3:08-MC-0107-K, 2009 WL 10670524 (N.D. Tex. Mar. 24,
2009) ........................................................................................................................................2, 9

*Intel Corp. v. Advanced Micro Devices, Inc.,*
542 U.S. 241 (2004)............................................................................................................ *passim*

*In re Kim,*
No. 24-mc-80072-PCP, 2024 WL 1898453 (N.D. Cal. April 30, 2024)..................................13

*In re Kim,*
No. 24-mc-80178-BLF, 2024 WL 4093920 (N.D. Cal. Sept. 4, 2024) ...................................13

*LEG Q LLC v. RSR Corp.,*
No. 3:17-CV-1559-N-BN, 2017 WL 3780213 (N.D. Tex. Aug. 31, 2017) ............................10

*In re Plan. & Dev. of Educ., Inc.,*
No. 21-MC-80242-JCS, 2022 WL 228307 (N.D. Cal. Jan. 26, 2022) ....................................14

*In re Request for Jud. Assistance from Seoul Cen. Dist. Ct.,*
No. 23-mc-80016-BLF, 2023 WL 2394545 (N.D. Cal. Mar. 7, 2023).....................................13

*In re SPS I Fundo de Investimento de Acoes – Investimento no Exterior*, 22-mc-
00118 (LAK), 2024 WL 917236 (S.D.NY. March 4, 2024) .............................................10, 11

*In re Starship Entm't,*
No. 23-mc-80147-BLF, 2023 WL 3668531 (N.D. Cal. May 24, 2023)..............................12, 13

ii

*In re Tagami,*
    No. 21-mc-80153-JCS, 2021 WL 5322711 (N.D. Cal. Nov. 16, 2021) ...................................14

*Texas Keystone, Inc. v. Prime Natural Resources, Inc.,*
    694 F.3d 548 (5th Cir. 2012) .......................................................................................12

*Thunder Studios, Inc. v. Kazal,*
    13 F. 4th 736 (9th Cir. 2021) .......................................................................................14

*Tokyo Univ. of Soc. Welfare v. Twitter, Inc.,*
    No. 21-mc-80102-DMR, 2021 WL 4124216 (N.D. Cal. Sept. 9, 2021) ...................................14

*United States v. Google LLC,*
    690 F. Supp. 3d 1011 (N.D. Cal. 2023) .......................................................................12, 13, 14

**Statutes**

28 U.S.C. § 1782..................................................................................................... *passim*

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION/ISSUES TO BE DECIDED

Applicant BigHit Music Co., Ltd. requests the Court's assistance to identify the anonymous user of an X account (formerly Twitter, now a service offered by X Corp.) under the display name "BTS ARIRANG LEAK" and username @jwngkcck (the "Account"). In March 2026, this Account repeatedly infringed Applicant's copyrights by posting unreleased copyright materials of the Korean music group BTS, whose sound recording rights are owned by BigHit. While these recordings and music album photo covers have not been officially released, the Account has repeatedly distributed leaked versions of such materials without authorization. These actions violate the statutory and other legal interests of Applicant and have caused damage to the Applicant, including by substantially undermining its efforts to promote BTS. BTS and other prominent music groups invest extensive resources into planning and executing the most effective release of albums, songs, lyrics, and associated material as possible, so as to have the greatest possible impact on potential listeners and the market when the media are released. Unauthorized leaks severely undermine these efforts, destroying the excitement and anticipation for hearing never-before-released songs and causing substantial economic and reputational harm in the process.

Applicant is planning to imminently initiate a civil lawsuit against the user(s) of the Account in South Korea (the "Korean Lawsuit"). On information and belief, the Account's user(s) is/are likely Korean. The individual(s) must be identified so that Applicant can prosecute the Korean Lawsuit; otherwise, the deliberate misconduct of the individual(s) will go unsanctioned. Applicant, however, cannot request the account information from X in Korea, as X resides outside of the jurisdiction of the Korean courts. Applicant thus files this Application pursuant to 28 U.S.C. § 1782(a), seeking this Court's authorization to serve the Subpoena on X for limited discovery that would enable Applicant to obtain from the relevant Korean telecommunications company(ies) the

1

identity of the user(s) of the @jwngkcck X account. ***Applicant has shared a copy of this Application with X's counsel, and X does not oppose the Application or the relief requested herein.***

This Court should grant the Application because Applicant has satisfied the three statutory requirements of Section 1782(a): (1) X maintains its corporate headquarters in Bastrop, Texas in the Western District of Texas, such that X is found in this district; (2) information obtained through Applicant's Subpoena will be used to identify the defendant(s) to be named in Applicant's Korean Lawsuit; and (3) Applicant is an interested person because it will be the plaintiff in the Korean Lawsuit. This is a straightforward analysis that this Court routinely analyzes in similar circumstances. Granting this Application would further Section 1782's goals of "mak[ing] United States discovery assistance for foreign cases simple, generous and fair" and "clarif[y] and liberalize . . . existing U.S. procedures for assisting foreign and international tribunals and litigants in obtaining oral and documentary evidence in the United States . . . [and] to encourag[e] foreign countries by example to provide similar means of assistance to our courts." *In re Godfrey*, Civil Action No. 3:08-MC-0107-K, 2009 WL 10670524, at *7 (N.D. Tex. Mar. 24, 2009) (internal quotation marks and citations omitted).

This Court should also grant the Subpoena because all four factors set forth in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) support its issuance: (1) X is not a participant in the Korean Lawsuit; (2) the Korean court presiding over the Korean Lawsuit will likely receive evidence obtained through the Subpoena; (3) Applicant does not seek to circumvent foreign proof-gathering restrictions or the policies of the United States; and (4) the Subpoena is narrowly tailored to obtain information sufficient to identify the defendant(s) and is not unduly intrusive or burdensome.

2

There is enhanced urgency to this Application because Korean telecommunication companies only store identifying user data for ninety days, before it is purged under company policy. If the relevant Korean telecommunications company(ies) purge(s) data pertaining to the Account, Applicant will be irreparably harmed by becoming unable to identify the user(s) of the Account, and thereby becoming unable to name the defendant(s) in the Korean Lawsuit. Time is therefore of the essence in obtaining a Subpoena to obtain the requested information from X.

Importantly, for purposes of this Application, this Court need not adjudicate, evaluate, or opine on the facts of the Account user(s)' wrongdoing or the merits of the Korean Lawsuit. The Court need only make the determination that the statutory requirements of 28 U.S.C. § 1782 are met, and that the discretionary factors set forth by the United States Supreme Court weigh in favor of granting the Application. These requirements and discretionary factors are all satisfied.

This Court has affirmed that *ex parte* procedures to submit this Application are permissible because "[i]t is routine and proper for applications under § 1782 to be filed *ex parte*." *In re Frederick*, No. 1-20-MC-965-RP-SH, 2020 WL 5742772, at *1 n.2 (W.D. Tex. Sept. 24, 2020), *report and recommendation adopted*, No. 1:20-MC-965-RP, 2020 WL 13190169 (W.D. Tex. Oct. 2, 2020) (quoting numerous cases for this proposition and acknowledging that "district courts routinely grant § 1782 applications *ex parte* because the respondent can challenge any discovery request by moving to quash the subpoena"). Applicant has exceeded its requirements, as it has provided a copy of this Application to X's counsel.

Accordingly, Applicant respectfully requests that the Court grant the Application and issue an order that authorizes Applicant to serve the appended Subpoena on X.

## II.   BACKGROUND

### A.   The Applicant

BigHit is a corporation incorporated under the laws of Korea and the owner of the sound recording master rights at issue in this Application. (Declaration of Claire Shin ("Decl.") at ¶ 3.) BigHit is engaged in the global entertainment business, including managing and training singers and musicians performing in the globally popular Korean pop music ("K-pop") genre. (*Id.* at ¶ 4.)

One of the music groups managed by Applicant is BTS, the internationally renowned artist group whose new album release is at the center of this dispute. BTS has redefined global music as the best-selling artist in Korean history, with over 40 million albums sold and multiple Billboard/Grammy records.[1] They are the first Korean act to top the United States Billboard 200/Hot 100, the first to sell out Wembley Stadium, and have won Billboard Music Awards, AMAs, and earned multiple Grammy nominations.[2] BTS's success has been described as follows:

- The Global Superstars: "In an age of despair and division, a boy band from South Korea remixed the rules of pop and created a fandom bigger than Beatlemania."[3]

- The Record-Breakers: "BTS are known for their record-breaking achievements, including on Billboard's very own charts."[4]

- The Cultural Influencers: "Just as the Fab Four put England's Liverpool on the map, globalized youth culture and had multifaceted influence, the seven members of BTS have surpassed mere pop stardom, having a profound impact on South Korea and the world."[5]

---

[1] https://guinness-world-records.fandom.com/wiki/BTS.
[2] https://guinness-world-records.fandom.com/wiki/BTS.
[3] https://www.newyorker.com/culture/culture-desk/joining-the-bts-army.
[4] https://www.billboard.com/music/pop/every-bts-guinness-world-record-1235010255/.
[5] https://www.silversea.com/blog/destinations/asia/what-to-know-about-bts-koreas-wildly-popular-band-changing-music-and-the-world.

- Time Magazine chose BTS as the Entertainer of the Year in 2020 and Time Magazine's readers chose BTS as the 2018 Person of the year.[6]

- Guinness World Records: BTS was the fastest account to 1 million followers on TikTok and the most streamed group on Spotify.[7]

- YouTube: BTS's music videos "Dynamite" and "Butter" surpassed 2 billion and 1 billion views respectively, setting records for Korean groups.[8]

Social media is a vitally important resource that BigHit uses to enhance and grow the audiences and reach of BTS, while the fan engagement developed through social media enhances sales, fans' connections to the musicians, and related content. (*Id.*) BigHit's and its artists' business and reputation can be (and frequently are) dramatically impacted by statements made by their representatives, BigHit's artists, and members of the public on social media platforms, such as X. (*Id.*) BigHit and BTS invest extensive resources into planning and executing the most effective release of albums, songs, lyrics, and associated material as possible, so as to have the greatest possible impact on potential listeners and the market when the media are released. (*Id.* at ¶ 6.) Here, the Account's user(s) committed blatant acts of copyright infringement and trade secret infringement (subject to review under Korean law) publicly on X, targeting one of the most highly anticipated album releases of the year by BTS. The leak of BTS's album destroyed the element of surprise that Applicant was building up towards its release, negatively impacting its reputation and sales. (*Id.* at ¶ 9.)

---

[6] https://time.com/entertainer-of-the-year-2020-bts/; https://time.com/5472018/person-of-the-year-poll-winner/.
[7] https://guinness-world-records.fandom.com/wiki/BTS.
[8] https://www.youtube.com/watch?v=gdZLi9oWNZg&list=RDgdZLi9oWNZg&start_radio=1; https://www.youtube.com/watch?v=WMweEpGlu_U&list=RDWMweEpGlu_U&start_radio=1.

**B.    The Subpoenaed Entity**

X is a Nevada corporation headquartered in Bastrop, Texas. (*Id.* at ¶ 7.) X falls outside the jurisdiction of the courts of Korea. (*Id.*)

**C.    The Account User(s)' Misconduct**

One of the music groups that Applicant manages is K-pop sensation BTS. (*Id.* at ¶ 5.) On March 20, 2026, BTS released "Arirang," which is a studio album containing fourteen songs. (*Id.* at ¶ 8.) Applicant holds various rights as pertaining to Arirang. (*Id.*)

Yet, prior to the official public release of Arirang, Applicant discovered that BTS's not-yet-released songs, lyrics, concept art, cover images, and associated information were being published without authorization through the Account at issue in this Application. (*Id.* at ¶ 9.) In early March 2026, the Account repeatedly distributed unauthorized, leaked, and unreleased BTS songs, lyrics, concept art, and cover images that had not been officially released or licensed for public distribution by the rights holder, BigHit. (*Id.*) The Account's display name "BTS ARIRANG LEAK" expressly confirms the illicit purpose of the Account, and the Account's user(s) even express(es) awareness of potential legal issues by stating in the Account's biography "fan account | not violated any rules, no copyright, following all @x's rules." (*Id.*)

The user(s) conduct caused substantial harm to Applicant's efforts to enhance the public's excitement about the anticipated official release of the Arirang album, irreparably releasing copyrighted and not-yet-publicized information prematurely. (*Id.*) The Account's user(s) was expressly warned to stop its "unauthorized activity," and was notified that "we request that you remove the files from your system, including any mirrored or duplicate copies of those files from your system, and/or that you disable all access to the infringing files and associated links." (*Id.*)

The Account does not contain any identifying information, as both the display name and username are anonymous. (*Id.*) The profile picture appears to depict an individual of Korean

6

ethnicity, suggesting that the user(s) is likely a Korean (particularly given the subject of the account: a Korean pop music group), not American, citizen. (*Id.*)

Upon discovery of the leaks, Applicant promptly reported the copyright violation to X. (*Id.* at ¶ 10.) Subsequently, the Account's posts have been deleted and the Account's username has been changed to *b*. (*Id.*) Nonetheless, the Account user(s)'s conduct violates the law and has damaged Applicant's business and reputation. (*Id.*)

**D.      The Korean Lawsuit**

The Applicant has taken steps to prepare a civil lawsuit to be filed in Korean courts, asserting various good faith claims against the Account's user(s), including but not limited to copyright and trade secret violations, misappropriation, breach of confidentiality obligations, conversion, and other civil torts cognizable under Korean law. (*Id.* at ¶ 13) By posting unreleased sound recordings by BTS just days before those recordings were scheduled to be officially released, the anonymous user(s) of the Account has/have harmed the Applicant's reputation and posed monetary harms, including but not limited to loss of product sales and other marketing damages. (*Id.*)

Applicant seeks to hold those responsible accountable and to recover damages through legal proceedings in Korea, but cannot do so unless it identifies the Account's user(s). (*Id.*) If X was subject to the jurisdiction of Korean courts, Applicant would be able to obtain the requested information through regular discovery proceedings in Korea. (*Id.* at ¶ 11.) However, X is a Nevada corporation with its principal office located in Bastrop, Texas, and Korean courts thus do not have jurisdiction over X, which is why Applicant cannot seek discovery from X in the lawsuit proceeding in Korea. (*Id.* at ¶ 11.)

### E.    This Application and the Proposed Subpoena

Applicant requests that the Court permit limited discovery regarding the user(s)'s conduct by allowing Applicant to serve the Subpoena on X. This discovery is necessary to obtain information sufficient to identify the owner(s) and user(s) of the Account, and is particularly important given the user(s)'s apparent attempts to hide his or her identity (as shown by the anonymized display name "BTS ARIRANG LEAK" and username @jwngkcck). (*Id.*) Specifically, the Subpoena requests three categories of documents: (1) documents sufficient to identify the account identifier(s), display name(s), creation date(s), name(s), gender(s), date(s) of birth, mailing and physical address(es), email address(es), phone number(s), and other contact information of "the person(s) who created, used, and/or otherwise logged in to" the Account; (2) access logs from January 1, 2026 through the date X responds to the Subpoena (including but not limited to the dates, timestamps, IP addresses, port numbers, and destination IP addresses) associated with the Account; and (3) documents sufficient to identify the name(s), gender(s), date(s) of birth, mailing and physical address(es), email address(es), phone number(s), and other contact information of "the person(s) associated with credit card(s), bank account(s), and/or other electronic commerce details registered with" the Account. (*See* Subpoena) The third request specifically states that it "does not seek any financial transaction information such as credit card numbers, bank account numbers, or electronic commerce account numbers or passwords." (*Id.*) This discovery should be permitted because it will allow Applicant to identify the defendant(s) for its soon-to-be-filed Korean Lawsuit.

## III.    LEGAL STANDARD

Section 1782(a) authorizes a district court to order a person "resid[ing] or "found" in that district to "give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, . . . upon the application of any interested person."

28 U.S.C. § 1782(a); *Intel Corp.*, 542 U.S. at 246. "It is routine and proper for applications under § 1782 to be filed *ex parte.*" *In re Frederick*, No. 1-20-MC-965-RP-SH, 2020 WL 5742772, at *1 n.2 (W.D. Tex. Sept. 24, 2020), *report and recommendation adopted*, No. 1:20-MC-965-RP, 2020 WL 13190169 (W.D. Tex. Oct. 2, 2020).

Following *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) (the United States Supreme Court's seminal case on 28 U.S.C. § 1782 applications), Section 1782 requires the applicant to meet three threshold conditions: "(1) the person from whom discovery is sought must reside or be found in the district in which the application is filed; (2) the discovery must be for use in a proceeding before a foreign tribunal; and (3) the application must be made by a foreign or international tribunal or any interested person." *Bravo Express Corp. v. Total Petrochemicals & Refining U.S.*, 613 F. App'x. 319, 322 (5th Cir. 2015) (internal quotation marks and citations omitted). Once an applicant satisfies these three requirements, the district court judge has the discretion to grant the application seeking the authority to issue subpoenas. *See In re Godfrey*, Civil Action No. 3:08-MC-0107-K, 2009 WL 10670524, at *8 (N.D. Tex. Mar. 24, 2009) ("the Court exercises its discretion to permit the discovery under § 1782(a)).

The Supreme Court instructed that district courts should also consider the following four discretionary factors when considering an application: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceeding underway abroad, and the receptivity of the foreign court to federal court assistance; (3) whether the application conceals an attempt to circumvent foreign proof-gathering restrictions of a foreign country; and (4) whether the application is unduly intrusive or burdensome. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004); *Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 376 n.3 (5th Cir. 2010).

9

Because (a) this Application satisfies the three statutory requirements of Section 1782(a), (b) all four *Intel Corp.* factors weigh in favor of permitting the discovery requested in the Subpoena, and (c) X does not oppose the relief requested herein, the Court should grant the Application.

## IV. ARGUMENT

### A. All Three Statutory Requirements of Section 1782 Are Met.

First, X is found in this Court's District, as X's corporate headquarters are in Bastrop, Texas. (Decl., ¶ 7.) *See LEG Q LLC v. RSR Corp.*, No. 3:17-CV-1559-N-BN, 2017 WL 3780213, at *6 (N.D. Tex. Aug. 31, 2017) (companies found where corporate headquarters are located).

Second, this discovery will be used in a proceeding before a foreign tribunal. In enacting Section 1782, "Congress recogni[zed] that judicial assistance would be available 'whether the foreign or international proceeding or investigation is of a criminal, civil, administrative, or other nature.'" *Intel*, 542 U.S. at 259. Applicant will use the requested discovery to identify the user(s) of the Account, which will, in turn, allow Applicant to name the user as a defendant in the Korean Lawsuit. (Decl. at ¶ 12–13.) Thus, Applicant has satisfied the second statutory requirement. *See In re Bleach, Inc.*, No. 24-mc-80021-PCP, 2024 WL 1898450, at *1–2 (N.D. Cal. Apr. 30, 2024) (permitting subpoena on X for personally identifiable information of an anonymous X user, which the applicant intended to use to file a lawsuit against that user in Japan). This discovery is permissible under Section 1782 even though the Korean Lawsuit has not yet been filed, because Applicant is planning to imminently initiate a civil lawsuit as soon as the identity of the user(s) is discovered. (Decl. at ¶ 12–13.) *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004) (the proceeding for which discovery is sought must be in "reasonable contemplation"); *In re SPS I Fundo de Investimento de Acoes – Investimento no Exterior*, 22-mc-00118 (LAK),

10

2024 WL 917236 (S.D.N.Y. March 4, 2024) (granting application for discovery for use in contemplated, but not yet filed, lawsuit in foreign country).

The relief sought in this Application is particularly urgent, as Korean telecommunication companies only store identifying user data for ninety days, before it is purged under company policy. (Decl. at ¶ 15.) Thus there is an urgent need to promptly identify information (including the user(s) phone number(s)) from X, so that Applicant may use the information to identify the user(s) through further efforts in Korea, as necessary. Unless this Court grants this Application and orders X to respond within a prompt timeframe, it is highly likely that Applicant will be forever unable to ascertain the identity of the Account's user(s). Courts have granted the requested relief on the timeframes set forth in the Proposed Order attached herewith. *See In Re Ex Parte Application of HYBE Co., Ltd. and Belift Lab Inc.*, Case No. 5:25-mc-80246-PCP (N.D. Cal. Aug. 19, 2025), ECF No. 7, Order Granting Ex Parte Application.

Third, Applicant is an "interested person" under Section 1782 because it will be the plaintiff in the anticipated Korean Lawsuit. (Decl. at ¶¶ 12–13). *See Intel Corp.*, 542 U.S. at 256 ("No doubt litigants are included among, and may be the most common example of, the 'interested person[s]'") (alteration in original).

Because Applicant has satisfied the three statutory requirements of Section 1782(a), the Court has the authority to grant the relief sought by the Application.

**B.     All Four Discretionary Factors Support this Application.**

All four of the discretionary *Intel* factors weigh in favor of this Court granting the Application.

First, X will not and cannot be a "participant in the foreign proceeding," *Intel Corp.*, 542 U.S. at 264, as it lies outside the jurisdiction of Korean courts. (Decl. at ¶ 7.) As the United States Supreme Court explained: "A foreign tribunal has jurisdiction over those appearing before it, and

11

can itself order them to produce evidence. In contrast, nonparticipants in foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Intel Corp.*, 542 U.S. at 244 (internal citations omitted).

Second, there is no indication that the Korean courts are not receptive to United States Federal Court assistance. Korean courts have not ordered the rejection of evidence obtained through a Section 1782 subpoena. (Decl. at ¶ 14; *see In re Starship Entm't*, No. 23-mc-80147-BLF, 2023 WL 3668531, at *3 (N.D. Cal. May 24, 2023) (granting Section 1782 application for discovery to identify the anonymous user of a YouTube channel posting about K-pop singers).

Third, the Application does not "circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel Corp.*, 542 U.S. at 264–65. This factor weighs in favor of discovery unless there is "'authoritative proof' such as a "judicial, executive or legislative declaration" that the proposed discovery would be rejected in Korea. *Ecuadorian Plaintiffs*, 619 F.3d at 378 (citations omitted). There are no restrictions or policies of the United States or Korea that would prohibit granting this Application. Indeed, this is the only means for Applicant to collect the information sought, because X is not subject to the jurisdiction of Korean courts. (Decl. at ¶¶ 11–13.)

Fourth, the Subpoena is not "unduly intrusive or burdensome." *Intel Corp.*, 542 U.S. at 265. Whether an application for discovery pursuant to Section 1782 is overly burdensome is considered pursuant to "the normal federal discovery rules." *Texas Keystone, Inc. v. Prime Natural Resources, Inc.*, 694 F.3d 548, 556 (5th Cir. 2012). "Requests are unduly intrusive and burdensome where they are not narrowly tailored, request confidential information, and appear to be a broad 'fishing expedition' for irrelevant information." *United States v. Google LLC*, 690 F. Supp. 3d

1011, 1023 (N.D. Cal. 2023) (citation omitted). Here, information is sought only about a single X account for a limited purpose: to ascertain the identity of the user(s) so that Applicant may name the appropriate defendant(s) in the Korean Lawsuit. (Decl. at ¶¶ 11–13.) The requests are narrowly tailored to this purpose—the Subpoena does not seek the content of any communications associated with the Account, does not seek sensitive financial information, and only seeks access logs within a limited timeframe pertinent to (and immediately preceding and spanning) the user(s)' misconduct. (*See* Subpoena.)

All of the information requested in the Subpoena seeks standard identifying and contact information of the user(s) of the Account, information that has previously been sought in approved applications under Section 1782 in many prior cases. *See, e.g.*, *Google*, 690 F. Supp. 3d at 1023 (granting application seeking name, gender, phone number, and date of birth); *In re Request for Jud. Assistance from Seoul Cen. Dist. Ct.*, No. 23-mc-80016-BLF, 2023 WL 2394545, at *3 (N.D. Cal. Mar. 7, 2023) (granting application seeking names, dates of birth, email addresses, phone numbers, and IP addresses); *Starship Entm't*, 2023 WL 3668531, at *4 (granting application seeking "names, addresses, email addresses, and telephone numbers, as well as identifying access log information, such as IP addresses," from three months prior to order through date of response to subpoena); *In re Kim*, No. 24-mc-80072-PCP, 2024 WL 1898453, at *1–2 (N.D. Cal. April 30, 2024) (granting application seeking "name, gender, date of birth, address, email address, and telephone number … as well as the access logs (including timestamps, IP addresses, and port numbers)"); *In re Kim*, No. 24-mc-80178-BLF, 2024 WL 4093920 (N.D. Cal. Sept. 4, 2024) (granting application seeking "names, dates of birth, addresses, e-mail addresses, telephone numbers, and banking information"). Here, the requested information is even more relevant and reasonably tailored because "the names and addresses on file with the X account may be fictitious

13

and insufficient alone to identify the X user." *In re Bleach, Inc.*, 2024 WL 1898450, at *2; *see also* Decl. at ¶¶ 9–11.

To the extent any First Amendment concerns are raised by unmasking the anonymous poster behind the Account, Applicant has satisfied any applicable requirements. Because the poster is likely a Korean (not American) citizen (Decl. at ¶ 9), "there is nothing in the record indicating that the anonymous speaker is entitled to First Amendment protections." *Google*, 690 F. Supp. 3d at 1023 (granting application to identify an anonymous online speaker to name as defendant in a Korean court proceeding). Several courts in other circuits have recognized that, even where the speakers are foreign citizens outside U.S. territory, First Amendment principles may counsel against exercising discretion to facilitate punishment of speech that would be protected in the United States. *See, e.g.*, *In re Plan. & Dev. of Educ., Inc.*, No. 21-MC-80242-JCS, 2022 WL 228307, at *4 (N.D. Cal. Jan. 26, 2022); *In re Tagami*, No. 21-mc-80153-JCS, 2021 WL 5322711, at *3 n.1 (N.D. Cal. Nov. 16, 2021). Many courts apply the framework set forth in *Highfields Capital Management, L.P. v. Doe*, which requires the applicant to come forward with a "real evidentiary basis for believing that the defendant has engaged in wrongful conduct" before disclosure is ordered. 385 F. Supp. 2d 969, 970–71 (N.D. Cal. 2005). If that showing is made, the court then balances the potential harm to First Amendment and privacy interests against the applicant's need for disclosure. *See, e.g.*, *Tokyo Univ. of Soc. Welfare v. Twitter, Inc.*, No. 21-mc-80102-DMR, 2021 WL 4124216, at *4 (N.D. Cal. Sept. 9, 2021). Where speech is in English and directed at and received by United States residents, the First Amendment interests of U.S. listeners may be implicated. *See Thunder Studios, Inc. v. Kazal*, 13 F. 4th 736, 744 (9th Cir. 2021). Here, there is no evidence that any United States residents were the targets or recipients of the unauthorized dissemination discussed in Section II.C above. The Account user(s)' misconduct

14

and harm to Applicant far outweigh any potential First Amendment protections, even if any applied.

Because all four discretionary factors weigh in Applicant's favor, this Court should grant the Application.

## V.    CONCLUSION

For the foregoing reasons, the Court should grant the Application and enter an order authorizing Applicant to serve the appended Subpoena on X, and requiring X to respond within the requested time period subject to the terms set forth in the Proposed Order attached hereto.

Date: June 23, 2026

By: *Brett Solberg by permission* /s/

Brett Solberg
brett.solberg@us.dlapiper.com
**DLA PIPER LLP (US)**
303 Colorado Street, Suite 3000
Austin, Texas 78701
Telephone:  (512) 457-7000
Facsimile: (512) 457-7001

Harry P. Rudo
harry.rudo@us.dlapiper.com
DLA PIPER LLP US
650 S. Exeter Street, Suite 1100
Baltimore, MD 21202
Telephone: (410) 580-3000
Facsimile: (410) 580-3001

*Attorneys for Applicant BigHit Music Co., Ltd.*

Reviewed and unopposed by:

By: */s/ J. Jonathan Hawk*
J. Jonathan Hawk
jhawk@mcdermottlaw.com
Ari Swazer
aswazer@mcdermottlaw.com
**McDermott Will & SCHULTE LLP**
2049 Century Park East, Suite 3200
Los Angeles, CA  90067
+1 310 277 4110

*Attorneys for X Corp.*

15

## CERTIFICATE OF CONFERENCE

Counsel for Applicant (including Harry P. Rudo) have conferred with counsel for X (including J. Jonathan Hawk and Ari Swazer) with regards to this Application (including through multiple phone calls in the weeks preceding the submission of this Application), and counsel for X have confirmed that X does not oppose this Application and the relief requested herein, and that X consents to the appointment of a magistrate judge in this matter.

Date: June 23, 2026                    By: */s/ Harry P. Rudo*
                                        Harry P. Rudo
                                        *Attorney for Applicant BigHit Music Co., Ltd.*


## CERTIFICATE OF SERVICE

Counsel for Applicant has provided this Application and supporting documents to counsel for X prior to filing this Application.  Counsel for X has reviewed this Application and does not oppose this Application and the relief requested herein.

Date: June 23, 2026                    By: */s/ Harry P. Rudo*
                                        Harry P. Rudo
                                        *Attorney for Applicant BigHit Music Co., Ltd.*

16